Case 1:08-cv-03013    Document 1    Filed 05/23/2008    Page 1 of 5

FILED COPY: MAY 23, 2008
08CV3013   EDA
JUDGE COAR
MAGISTRATE JUDGE COLE

50484-CON

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| EDWARDS ENGINEERING, INC., | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. |
| | ) | Judge: |
| PRECISION BOILERS, INC. | ) | Magistrate: |
| Defendant. | ) | |

## COMPLAINT

NOW COMES Plaintiff, EDWARDS ENGINEERING, INC. ("Edwards Engineering"), by and through its attorney, Francisco E. Connell, and Complains against Defendant, PRECISION BOILERS, INC. ("Precision Boilers") as follows:

### Jurisdiction and Venue

1. The court has jurisdiction in accordance with 28 U.S.C. § 1332 because plaintiff and defendant are citizens of different states, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

2. Venue is proper in accordance with 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Chicago, Illinois. Moreover, venue is proper because the defendant, a Tennessee Corporation, is subject to personal jurisdiction in this district based on its sufficient contacts here.

### Facts Common to All Counts

3. Edwards Engineering is an Illinois Corporation with its principal place of business in Elk Grove Village, Illinois.

4. Defendant, Precision Boilers, is a Tennessee Corporation, and its principal place of business is in Morristown, Tennessee.

5. On November 30, 2005, Edwards Engineering was hired by Illinois Masonic

Hospital ("Illinois Masonic") to perform boiler replacement work at 836 W. Wellington, Chicago, Illinois.

6. Edwards Engineering ordered a boiler from Precision Boilers for installation at Illinois Masonic pursuant to the Purchase Order dated August 15, 2005 ("Purchase Order") as is more fully set forth and incorporated herein as Exhibit A.

7. Precision Boiler accepted the terms of the Purchase Order when it failed to object to the contents of the Purchase Order within ten (10) days of receipt.

8. Precision Boilers both commenced work on the boiler and shipped the boiler pursuant to the Purchase Order. See Exhibit A at 10, ¶ 1.

9. Under the terms of the Purchase Order, all material and equipment furnished under the order were warranted by the Precision Boilers against defects, and Precision Boilers agreed to repair or replace without charge and/or remedy any defects which may develop within five (5) years. (See Exhibit A at 10, ¶ 2; Exhibit A at 6).

10. The boiler provided by Precision Boilers pursuant to the Purchase Order was defective in on or more of the following ways:

    a. The boiler failed to meet the specifications of the Purchase Order;

    b. The boiler failed to operate properly; and,

    c. The boiler ultimately failed to work at all.

## COUNT I – BREACH OF CONTRACT

11. Plaintiff realleges and incorporates paragraphs 1 through 10 as paragraph 11 of Count I.

12. Precision Boilers breached the terms of the Purchase Order in that it failed to deliver a boiler that produced capacities or met design specifications, intent, and function as called for in the specifications and the Purchase Order.

13. As a result of Precision Boiler's breach, Edwards Engineering incurred damages of $353,323.59 for the replacement of the defective boiler.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

A. That judgment be entered in its favor and against Defendant, PRECISION BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B. For such other and further relief as this Court deems just and proper.

## COUNT II – BREACH OF WARRANTY

14. Plaintiff realleges and incorporates paragraphs 1 through 10 as Paragraph 14 of Count II.

15. The boiler was covered under a five (5) year parts and one (1) year labor Warranty from the date the boiler was placed in operation. (See Exhibit A at 6; Exhibit A at 10, ¶ 2).

16. The boiler never operated according to specifications

17. Precision Boilers' attempts to repair the boiler were unsuccessful.

18. Despite multiple requests by Edwards Engineering, Precision Boilers has failed or refused to repair or replace the defective boiler as required under the warranty.

19. As a result of Precision Boiler's breach, Edwards Engineering incurred damages of $353,323.59 for the replacement of the defective boiler.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

A. That judgment be entered in its favor and against Defendant, PRECISION BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B. For such other and further relief as this Court deems just and proper.

## COUNT III – BREACH OF IMPLIED WARRANTY: MERCHANTABILITY; USAGE OF TRADE

20. Plaintiff realleges and paragraphs 1 through 10 as Paragraph 20 of Count III.

21. Pursuant to 810 ILCS 5/2-314, there is an implied warranty that the boiler was fit for the ordinary purposes for which such boilers are used.

22. Precision boilers breached the implied warranty when it delivered a boiler which was unfit for the ordinary purposes for which boilers are used.

23. As a result of Precision Boiler's breach, Edwards Engineering incurred damages of $353,323.59 for the replacement of the defective boiler.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

A. That judgment be entered in its favor and against Defendant, PRECISION BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B. For such other and further relief as this Court deems just and proper.

## COUNT IV – BREACH OF IMPLIED WARRANTY: FITNESS FOR PARTICULAR PURPOSE

24. Plaintiff realleges and incorporates paragraphs 1 through 10 as Paragraph 24 of Count III.

25. Precision Boilers had reason to know the particular purpose for which the Edwards Engineering ordered the boiler.

26. Edwards Engineering relied on Precision Boilers' skill or judgment to furnish a suitable boiler.

27. Pursuant to 810 ILCS 5/2-315, there is an implied warranty that the boiler delivered by Precision Boilers be fit for the purpose required by Edwards Engineering pursuant to the Purchase Order and industry standards.

28. Precision breached the implied warranty of fitness when it delivered a boiler that was not fit for the particular purpose required by Edwards Engineering.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

A. That judgment be entered in its favor and against Defendant, PRECISION BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B. For such other and further relief as this Court deems just and proper.

### Jury Demand

Plaintiff demands trial by jury.

Respectfully Submitted,
EDWARDS ENGINEERING, INC.

By: __s/ Francisco E. Connell__
     One of its attorneys

Robert R. Benjamin (ARDC #0170429)
Francisco E. Connell (ARDC #6289256)
Querrey & Harrow, Ltd.
Attorneys for Plaintiff
175 W. Jackson St., Ste. 1600
Chicago, IL  60604
(312) 540-7000

Document #: 1315030

08CV3013   EDA
JUDGE COAR
MAGISTRATE JUDGE COLE

# EDWARDS ENGINEERING INC.

**1000 Touhy Avenue**
**Elk Grove Village, IL  60007-4922**

Phone (847)364-8100 Fax (847)364-0188

| Vendor ID | PRE572 |

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA   37814

**Phone** (423)587-9390 **Fax** (423)587-7749

**PO #**  **M94500**

Ordered 08/15/2005

Page #         1 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL   60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | ** REVISED 10/3/05** | R | 1.0000 LT | $46,006.5000 | | $46,006.50 |
| | | TAG WITH: PRECISION SALES ORDER NUMBER UO50069 DATED 7/27/2005 | | | | | |
| | | One (1) Model UFS-33-500-150-WE-N-NOx Steam Boiler, 150 PSIG Maximum Allowable Working Pressure (MAWP) built in accordance with A.S.M.E. Code Section I for Power Boilers. The unit shall be designed and manufactured for an output of 17,250 lb/hr steam at 212 degrees F. 500 Horsepower unit shall be inspected and stamped in accordance with the ASME Code and National Board Registered. | | | | | |
| | | Factory assembled boiler package includes inner casing, insulation, and outer casing. The insulation consists of 2" inner and ½" between the inner and outer casing. The inner and outer casings are removable to permit access to the tubes for inspection and or replacement. Rear access convection clean-out panels are furnished. The pressure vessel is set on a heavy structural steel base frame, which includes two lifting lugs on each side. Flue gas connection is located on the top centerline of the boiler at the front or rear. Furnace access is at the rear of the boiler. | | | | | |
| | | TAPPINGS AND CONNECTIONS | | | | | |
| | | "   Stack Connection             @     28" ID | | | | | |
| | | "   Bottom Blow Down (2 quick/1 slow)@    Two(2), 1 ½ " NPT, one front & one rear  "Feed water Inlet           @  1 ½ " NPT | | | | | |
| | | "   Surface Blow off          @    3/4" NPT | | | | | |
| | | BURNER PERFORMANCE & UTILITY | | | | | |

Continued



# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL   60007-4922

Phone (847)364-8100 Fax (847)364-0188

| Vendor ID | PRE572 |
|---|---|

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA   37814

Phone (423)587-9390 Fax (423)587-7749

**PO #**           **M94500**

Ordered 08/15/2005

Page #            2 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL   60657
**Terms**
**Ship Via**

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | REQUIREMENTS: (By Others) | | | | | |
| | | "   Electrical Power         @    460/60/3 | | | | | |
| | | "   Instrument Power       @    120/60/1 | | | | | |
| | | "   Gas Pressure             @    2# min. - 10# max | | | | | |
| | | "   NOx Emission Gas Firing    @    Less then 30 PPM | | | | | |
| | | "   Fuel Input                  @    21,000 MBH  (500 Horsepower) | | | | | |
| | | BOILER TRIM & CONTROLS | | | | | |
| | | "   Honeywell L404A Operating Limit | | | | | |
| | | "   Honeywell L404C High Limit | | | | | |
| | | "   Honeywell L91B-1050 Modulation Control | | | | | |
| | | "   Boiler Steam Pressure Gauge | | | | | |
| | | "   Main Low Water Cut-Off and Alarm | | | | | |
| | | "   Honeywell L404 Low Steam Pressure Sensor and Alarm (Set at 80 PSI) | | | | | |
| | | "   Auxiliary LWCO/Manual Reset | | | | | |
| | | "   Three(3) ASME Safety Relief Valves, 1.50" in x 2.0" out, set at150 PSI, rated 6800 Lbs/Hr each Stop and Check (Non-Return) Valve | | | | | |
| | | "   One (1) Slow Opening BD Valve | | | | | |
| | | "   Two (2) Quick Opening BD Valve | | | | | |
| | | "   One (1) feed water swing check valve | | | | | |
| | | "   One (1) feed water globe valve | | | | | |
| | | "   Automatic Surface BD | | | | | |
| | | "   Conductivity Control | | | | | |
| | | "   2 Spare Tubes per Configuration | | | | | |
| | | BURNER - FORCED DRAFT FOR USE ON NATURAL | | | | | |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL   60007-4922

Phone (847)364-8100 Fax (847)364-0188

| | |
|---|---|
| Vendor ID   PRE572 | **PO #**   **M94500** |
| | Ordered 08/15/2005 |
| PRECISION BOILERS INC | |
| 5727 SUPERIOR DR | Page #   3 of 12 |
| MORRISTOWN, PA   37814 | Ship to: |
| | ILLINOIS MASONIC MEDICAL |
| | CENTER |
| | 836 WEST WELLINGTON AVENUE |
| Phone (423)587-9390 Fax (423)587-7749 | CHICAGO, IL   60657 |
| | **Terms** |
| | **Ship Via** |

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | GAS | | | | | |
| | | The proposed boilers shall be furnished with Webster | | | | | |
| | | HDLRVX7G-200-MARK VI burners equipped with the | | | | | |
| | | following: | | | | | |
| | | "   UL/FM/IRI/CSD-1/Illinois Code Compliance | | | | | |
| | | "   Full Modulation Firing Sequence | | | | | |
| | | "   Forced Fan and TEFC Fan Motor | | | | | |
| | | "   Starters for Forced Draft Fan | | | | | |
| | | "   NEMA 1 Control Panel with 7 panel lights | | | | | |
| | | "   Fused Power on-off switch | | | | | |
| | | "   Control Circuit Transformer with fuse protection | | | | | |
| | | "   Auto Flame Safeguard - MARK VI With UV Flame | | | | | |
| | | Scanner (Johnson Metasys Compatible) | | | | | |
| | | "   Lights, Power On - Call For Heat - Main Fuel - High | | | | | |
| | | Steam - Low Steam - Low water - Alarm | | | | | |
| | | "   Switches for:  Manual Potentiometer, Manual- Auto | | | | | |
| | | "   Alarm Bell w/Silencing Switch | | | | | |
| | | "   Relays: Low Water, High Water, BAS, CAD, Flue | | | | | |
| | | Interlock | | | | | |
| | | "   Induced FGR - piping is included | | | | | |
| | | "   Air Inlet Silencer | | | | | |
| | | "   ABB VFD | | | | | |
| | | "   Eurotherm Chessell Multi Trace Recorder - mounted | | | | | |
| | | "   Hays Cleveland D-06200-00 Multi Pointer Flue Draft | | | | | |
| | | and Furnace Pressure Draft Gauge - mounted | | | | | |
| | | "   4.5" 300# Steam Pressure Gauge - mounted | | | | | |
| | | "   4.5" Gas Supply Pressure Gauge - mounted | | | | | |
| | | "   4.5" Manifold Gauge - mounted | | | | | |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

| Vendor ID | PRE572 |

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

PO #　　M94500

Ordered 08/15/2005

Page #　　4 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | " Engraved Light Labels | | | | | |
| | | " Engraved Switch Labels | | | | | |
| | | " 8:1 Turndown | | | | | |
| | | " Auto Flame DTI (Johnson Metasys Compatible) | | | | | |
| | | UL/CSD-1/FM/IRI GAS TRAIN | | | | | |
| | | Package Boiler/Burner Power Requirements | | | | | |
| | | " Maxon Dual Safety Valves | | | | | |
| | | Burner Blower Motor 20HP - 23.5 Amp. | | | | | |
| | | " Main Gas Regulator　　" S | | | | | |
| | | hutoff Cocks　　" Low | | | | | |
| | | and High Gas Pressure Switches　- Control | | | | | |
| | | Transformer Primary - 3.2 Amp. | | | | | |
| | | " Asco N.O. 1.25" Safety Vent Valve | | | | | |
| | | UL PILOT TRAIN | | | | | |
| | | " Dual Safety Valves | | | | | |
| | | " Main Gas Regulator | | | | | |
| | | " Shutoff Cocks | | | | | |
| | | PRICE | | | | | |
| | | One (1) 02 trim systems, EGA System, | | | | | |
| | | Start-up and owner training is Included. | | | | | |
| | | Equipment Bond. | | | | | |
| | | DELIVERED $153,355 | | | | | |
| | | TAG WITH: PRECISION SALES ORDER NUMBER | R | 1.0000 LT | $107,348.5000 | | $107,348.50 |
| | | UO50069 DATED 7/27/2005 | | | | | |
| | | One (1) Model UFS-33-500-150-WE-N-NOx Steam Boiler, | | | | | |
| | | 150 PSIG Maximum Allowable Working Pressure (MAWP) | | | | | |
| | | built in accordance with A.S.M.E. Code Section I for Power | | | | | |
| | | Boilers. The unit shall be designed and manufactured for | | | | | |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

| Vendor ID | PRE572 |
|---|---|

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

**PO #**  M94500

Ordered 08/15/2005

Page #  5 of 12
Ship to:
ILLINOIS MASONIC MEDICAL CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
**Terms**
**Ship Via**

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |

an output of 17,250 lb/hr steam at 212 degrees F. 500 Horsepower unit shall be inspected and stamped in accordance with the ASME Code and National Board Registered.
Factory assembled boiler package includes inner casing, insulation, and outer casing. The insulation consists of 2" inner and ½" between the inner and outer casing. The inner and outer casings are removable to permit access to the tubes for inspection and or replacement. Rear access convection clean-out panels are furnished. The pressure vessel is set on a heavy structural steel base frame, which includes two lifting lugs on each side. Flue gas connection is located on the top centerline of the boiler at the front or rear. Furnace access is at the rear of the boiler.
TAPPINGS AND CONNECTIONS
"    Stack Connection        @     28" ID
"    Steam Outlet             @     6"- ASME Flange
"    Bottom Blow Down (2 quick/1 slow)@    Two(2), 1 ½ " NPT, one front & one rear "Feed water Inlet         @ 1 ½ " NPT
"    Surface Blow off          @     3/4" NPT
BURNER PERFORMANCE & UTILITY
REQUIREMENTS: (By Others)
"    Electrical Power          @     460/60/3
"    Instrument Power         @     120/60/1
"    Gas Pressure             @     2# min. - 10# max
"    NOx Emission Gas Firing   @     Less then 30 PPM

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

| Vendor ID | PRE572 |

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

**PO #**       **M94500**

Ordered 08/15/2005

Page #    6 of 12
Ship to:
ILLINOIS MASONIC MEDICAL CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | "   Fuel Input   @   21,000 MBH (500 Horsepower) | | | | | |
| | | BOILER TRIM & CONTROLS | | | | | |
| | | "   Honeywell L404A Operating Limit | | | | | |
| | | "   Honeywell L404C High Limit | | | | | |
| | | "   Honeywell L91B-1050 Modulation Control | | | | | |
| | | "   Boiler Steam Pressure Gauge | | | | | |
| | | "   Main Low Water Cut-Off and Alarm | | | | | |
| | | "   Honeywell L404 Low Steam Pressure Sensor and Alarm (Set at 80 PSI) | | | | | |
| | | "   Auxiliary LWCO/Manual Reset | | | | | |
| | | "   Three(3) ASME Safety Relief Valves, 1.50" in x 2.0" out, set at 150 PSI, rated 6800 Lbs/Hr each | | | | | |
| | | "   Steam outlet 6" x 4" Reducer Spool Piece and 4" Stop and Check (Non-Return) Valve | | | | | |
| | | "   One (1) Slow Opening BD Valve | | | | | |
| | | "   Two (2) Quick Opening BD Valve | | | | | |
| | | "   One (1) feed water swing check valve | | | | | |
| | | "   One (1) feed water globe valve | | | | | |
| | | "   Automatic Surface BD | | | | | |
| | | "   Conductivity Control | | | | | |
| | | "   2 Spare Tubes per Configuration | | | | | |
| | | "   5 Year Parts Only Warranty, 1 Year Labor Only Warranty | | | | | |
| | | BURNER - FORCED DRAFT FOR USE ON NATURAL GAS | | | | | |
| | | The proposed boilers shall be furnished with Webster HDLRVX7G-200-MARK VI burners equipped with the | | | | | |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

    Vendor ID    PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

PO #    M94500

Ordered 08/15/2005

Page #    7 of 12
Ship to:
ILLINOIS MASONIC MEDICAL CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |

following:
" UL/FM/IRI/CSD-1/Illinois Code Compliance
" Full Modulation Firing Sequence
" Forced Fan and TEFC Fan Motor
" Starters for Forced Draft Fan
" NEMA 1 Control Panel with 7 panel lights
" Fused Power on-off switch
" Control Circuit Transformer with fuse protection
" Auto Flame Safeguard - MARK VI With UV Flame
Scanner (Johnson Metasys Compatible)
" Lights, Power On - Call For Heat - Main Fuel - High
Steam - Low Steam - Low water - Alarm
" Switches for: Manual Potentiometer, Manual- Auto
" Alarm Bell w/Silencing Switch
" Relays: Low Water, High Water, BAS, CAD, Flue
Interlock
" Induced FGR - piping is included
" Air Inlet Silencer
" ABB VFD
" Eurotherm Chessell Multi Trace Recorder - mounted
" Hays Cleveland D-06200-00 Multi Pointer Flue Draft
and Furnace Pressure Draft Gauge - mounted
" 4.5" 300# Steam Pressure Gauge - mounted
" 4.5" Gas Supply Pressure Gauge - mounted
" 4.5" Manifold Gauge - mounted
" Engraved Light Labels
" Engraved Switch Labels
" 8:1 Turndown

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL 60007-4922

Phone (847)364-8100 Fax (847)364-0188

| Vendor ID | PRE572 |

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA 37814

Phone (423)587-9390 Fax (423)587-7749

**PO #**     **M94500**

Ordered 08/15/2005

Page #    8 of 12
Ship to:
ILLINOIS MASONIC MEDICAL CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL 60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | " Auto Flame DTI (Johnson Metasys Compatible) | | | | | |
| | | UL/CSD-1/FM/IRI GAS TRAIN | | | | | |
| | | Package Boiler/Burner Power Requirements | | | | | |
| | | " Maxon Dual Safety Valves | - | | | | |
| | | Burner Blower Motor 20HP - 23.5 Amp. | | | | | |
| | | " Main Gas Regulator | - | | | | |
| | | Oil Pump Motor 1/2HP - 1.1 Amp. | | | | | |
| | | " Shutoff Cocks | | | | | |
| | | Air Atomizing Compressor - 5HP - 6.6 Amp. | | | | | |
| | | " Low and High Gas Pressure Switches | - | | | | |
| | | Control Transformer Primary - 3.2 Amp. | | | | | |
| | | " Asco N.O. 1.25" Safety Vent Valve | | | | | |
| | | UL PILOT TRAIN | | | | | |
| | | " Dual Safety Valves | | | | | |
| | | " Main Gas Regulator | | | | | |
| | | " Shutoff Cocks | | | | | |
| | | PRICE | | | | | |
| | | One (1) 02 trim systems, EGA System, | | | | | |
| | | Start-up and owner training is included. | | | | | |
| | | Equipment Bond, | | | | | |
| | | DELIVERED $153,355 | | | | | |
| | | Backcharge per MBJ. Amount settled with Ed Meilner (Meilner Mechanical Sales) Acct Rep. | R 1.0000 | | $-12,096.0000 | | $-12,096.00 |
| | | | | | Phase 3010 Total | | $141,259.00 |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

| Vendor ID | PRE572 |
|---|---|

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

**PO #**  **M94500**
**Ordered**

**Page #**   9 of 12
**Ship to:**
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
**Terms**
**Ship Via**

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| | | | | | Purchase Order Total | | $141,259.00 |

EDWARDS ENGINEERING, INC.
PURCHASE ORDER

1. Seller's execution and return of the acknowledgment copy of this purchase order, Seller's failure to object to the contents of this purchase order within ten (10) days of receipt, or Seller's commencement of work on such goods or shipment of such goods as described in this purchase order, whichever occurs first, shall be deemed acceptance of the Purchaser's offer to purchase contained in this purchase order. Any acceptance of this purchase order is limited to acceptance to the express terms of the offer contained herein. Any proposal for additional or different terms or any attempt by Seller to vary in any degree any of the terms of this offer in Seller's acceptance is hereby objected to and rejected, but such proposal shall not operate as a rejection of this offer, unless such variances are in the terms of the description, quantity, price or delivery schedule of the goods, but shall be deemed a material alteration thereof, and this offer shall be deemed accepted by the Seller without said additional or different terms. If this purchase order shall be deemed an acceptance of a prior offer by the Seller, such acceptance is limited to the express terms contained herein.
Additional or different terms or any attempt by Seller to vary in any degree any of the terms of this purchase order shall be deemed material and shall be rejected. This purchase order shall not operate as a rejection of the Seller's offer unless it contains variances in the terms of the description, quantity, price or delivery schedule of the goods. This purchase order can only be modified or changed in writing executed by an officer of Purchaser containing specific reference to the number and date of this purchase order.
2. All material and equipment furnished under this order shall be warranted by the Seller against defects, and Seller agrees to repair or replace without charge to Purchaser said material and equipment, or remedy and defects, latent or patent, not due to ordinary wear and tear, or not due to improper use or maintenance, which may develop within one year, such period to begin; (a) In cases involving material from date of acceptance; (b) In cases involving operative equipment, from date such equipment is placed in operation, or within the warranty period set forth in applicable plans and specifications, whichever is longer. The warranty shall survive any inspection, delivery, acceptance on payment by Purchaser of the materials or services. Seller warrants that with respect to the articles furnished or services performed hereunder, or both of them, that is has fully complied with the Fair Labor Standards Act, as mended, laws restraining use of convict labor, the Equal Equipment Opportunity and Fair Employment Practices legislation and any regulations issued under the foregoing, and other applicable federal, state and local laws, rules, regulations and executive orders.
3. All material and equipment furnished under this order is subject to the approval of the architect, engineer, or any other disclosed party. Seller shall furnish the required submittal data or required number of samples for approval. In the event approval is not given, this order is cancelled. However, if the approval is not given because of the failure of the Seller to furnish goods in compliance with the plans and specifications, Seller, at Purchaser's option, shall take such steps as necessary to make the goods comply with the plans and specifications, without any cost to Purchaser. In no event, shall Purchaser be liable to Seller for any costs, damages or other charges for any cancelled order, including, without limitation, restocking charges, loss profit, and/or lost overhead.
4. All material and/or equipment furnished hereunder shall be in strict compliance with plans, specifications, and general conditions including all alternates, addendums or revisions applicable to the contract of Purchaser with the Owner or another contractor, and Seller shall be bound thereby in the performance of this contract. Purchaser agrees to make available to Seller, upon request, all applicable contract documents with the Owner or another contractor.
5. Seller warrants that equipment covered by this purchase order to produce capacities or meet design specifications intent and function (1) as called for in the plans, specifications or addenda, (2) as herein set forth, and (3) as published or warranted by the manufacturer for the equipment involved. In the event the equipment does not meet the foregoing requirements, Seller shall immediately on notice replace same or remedy and deficiency without expense to the Purchaser, and further shall pay to Purchaser all loss or damage to the extent that the Purchaser is liable under its contract with the Owner or another contractor, provided Purchaser has made available, upon Seller's request, all applicable contract documents with the Owner or another contractor.
6. The materials and equipment covered by this order whether in a deliverable state or otherwise, shall remain the property of the Seller until delivered to the designated location and received by Purchaser with a receipt executed by Purchaser at which time title and risk of loss to any such materials and equipment shall pass to the Purchaser. Any damage to the material or equipment or loss of any kind in transit shall be borne by Seller notwithstanding the manner in which the goods are shipped or who pays the freight or other transportation costs. Purchaser shall notify the Seller as soon as practicable of any damage to material or equipment or any loss occurring in transit.
7. Purchaser assumes no obligation for equipment or materials shipped in excess of this purchase order.
8. The Seller hereby agrees to indemnify, defend and save harmless the Purchaser from the against all claims, loss, damage or expense, including attorney 's fees and other defense costs, by reason of any actual or alleged infringement of any patent or other intellectual property rights arising from the purchase of any equipment or material pursuant to this purchase order or any litigation based thereon covering any equipment or material purchased hereunder.
9. Payment to the Seller is dependent as a condition precedent upon the Purchaser receiving payment from its customer, including any retention.
10. When accepted, this order is not subject to cancellation, price change or reduction by Seller in the amount of deliveries except with written consent of an officer of Purchaser and on the terms and conditions herein.
11. All materials are subject to Purchaser's inspection and approval, and the final inspection and account will be made after receipt at Purchaser's designated destination; if rejected they will be held for disposition at Seller's risk and expense. Any payment on account thereof will be made promptly and refunded by Seller. Any inspection or approval at Seller's plant during or after manufacture shall be provisional only and not constitute final inspection not be construed as a waiver of the foregoing right of inspection and rejection after receipt of same.
12. No charge shall be made for tools, dies, patterns, drawings, etc., required for fabrication of parts unless so stated in this order.
13. All material must be packaged securely.
14. If shipment is not made within time specified, Seller shall notify Purchaser promptly. If Seller fails to deliver any or all of the material, or merchandise, or fails to render services covered by this order within the time agreed, Purchaser reserves the right to purchase elsewhere and charge Seller with loss incurred as a result thereof, or at Purchaser's option to cancel this order as to material or merchandise not delivered and services not rendered, and Purchaser shall be

under no obligation to accept or pay for same or compensate Seller for expenses incurred. Nothing in this clause shall affect any other right conferred on Purchaser by law.

15. Contract price includes all charges for taxes of any kind, transportation, cartage, delivery, boxing, packaging, crating and returnable cartons.

16. Seller is responsible for all articles covered by this order until delivery at delivery point designated herein, and shall bear all risks as to rejected articles after notice of rejection.

17. Purchaser reserves the right to change delivery specifications in accordance with its requirements.

18. Purchaser reserves right to countermand this order in the event of strike, flood, riot, war, rebellion, or any or all other contingency unavoidable or beyond its control which could make it impossible to or create an undue hardship to accept delivery of the material, merchandise or services herein ordered.

19. Payment does not constitute acceptance but all materials, merchandise or services are subject to Purchaser inspection and rejection, defective material or merchandise or service not per the specification will be held for Seller's instruction and at Seller's risk. No goods returned as defective shall be replaced without an order.

20. No statement, condition or agreement and no representation or guarantee has been made by any agent, officer or employee of Purchaser in any way affecting the terms hereof. No alternation or modification of this order is varied unless in writing, signed by an authorized executive of Purchaser.

21. To the fullest extent permitted by law, Seller agrees to defend, indemnify and hold harmless Purchaser and each of its shareholders, directors, officers, partners, employees, agents, subsidiaries and divisions (and each of their heirs, successors and assigns) from any and all claims demands, liabilities, suits, causes of action, judgments, costs and expenses, including attorneys' fees and other defense costs, arising, or allegedly arising, from personal injury, including death, property damage, including loss of use there of, economic loss, or otherwise, due in any manner to any negligent or intentional act or failure to act of Seller or any of its agents, employees or subcontractors as the result of furnishing or sale of goods pursuant to this purchase order, whether any act, error, omission or negligence of any indemnitee contributed thereto shall not bar the recovery of any other indemnitee hereunder. This indemnification provision is in addition and cumulative to any other right of indemnification or contribution which any of the indemnities may have in law, at equity or otherwise and shall survive termination of this purchase order. For any claims against any person or entity indemnified under this paragraph 21 by an employee of the Subcontractor, anyone directly or indirectly employed by it or anyone for whose acts it may be liable, the indemnification obligation under this paragraph 21 shall not be limited by limitation on an amount or type of damages, compensation or benefits payable by or for Subcontractors under its workers' compensation acts, disability benefit acts or other employee benefit acts.

22. Seller shall maintain commercial general liability insurance with limits of $2,000,000 general aggregate, $2,000,000 completed operations aggregate, and $2,000,000 each occurrence for bodily injuries, death and property damage, and personal injury resulting from any one occurrence during performance pursuant to this purchase order, including the following coverages and conditions:

   .1    Shall name Contractor and any other parties designated by Contractor an Additional Insureds as their interests may appear pursuant to ISO Additional Insured Endorsement CG 2010 (11/85) (or the most recent form of said endorsement, if applicable), including but not limited to the following entities:

   A copy of such Additional Insured endorsement shall be attached to the Certificate of Insurance, and the endorsement number or designation shall be entered on the Certificate.

   .2    Premises-Operations and Independent Contractors;
   .3    Products/Completed Operations for three (3) years after completion of the Work;
   .4    Broad Form Property Damage;
   .5    Contractual Liability;
   .6    Collapse, Explosion and Underground Property Damage;
   .7    Must be endorsed as Primary and Non-Contributory as to any other insurance of the Additional Insureds;
   .8    If the Additional Insureds have other insurance which is applicable to the loss, such other insurance shall be on an excess or contingent basis to the subcontractor's    policy;
   .9    If the primary/non-contributory wording is not available or provided, a separate Owners & Contractors Protective Liability (OCP) must be provided, listing all the    Additional Insureds and with limits equal to $2,000,000 per occurrence and $2,000,000 aggregate;
   .10    A Waiver of Subrogation in favor of Contractor shall also be included;
   .11    The General Aggregate shall apply on a "Per Project" basis; and
   .12    Broad form vendor's endorsement.

23. Rights and remedies reserved hereunder are cumulative and in addition to other rights and remedies at law or equity. No waiver or breach of any provision hereof shall constitute waiver of any other breach or of such provision. This order shall be governed in all respects by the laws of the State of Illinois. Any provisions hereof found to be invalid under Illinois law shall be invalid only with respect to the offending provisions.

24. All claims for monies due or to become due from Purchaser are subject to deduction by Purchaser for any offset from counterclaim arising from this or any other order from Purchaser to Seller.

25. In the event of any proceeding, voluntary or involuntary, in bankruptcy or insolvency, by or against Seller, or if there be appointment of assignee for benefit of creditors of Seller or of a Receiver for Seller, Purchaser may cancel any undelivered part of this order without liability.

26. Seller shall furnish to Purchaser, at its request, waiver or waivers of lien (partial or final) or other documents which Purchaser may request in order to comply with the Mechanic's Lien laws of the State of Illinois or any other applicable state.

27. Purchaser reserves the right to retain up to 10% of the purchase price subject to the final payment as specified in the purchaser's contract with General Contractor/Customer/Owner.

28. Seller shall comply with all safety and health requirements of local, state and federal regulatory agencies. Seller shall provide material safety data sheets, as required to comply, with OSHA standards.

29. No part of this purchase order may be assigned or subcontracted without the prior written approval of Purchaser.
30. This purchase order and any documents referred to therein constitute the entire agreement between the parties. The terms and conditions of this purchase order supersede any prior agreements, representations, inducements or understandings of any kind or nature between the Seller and Purchaser.
31. Under no circumstances, will Purchaser be liable to Seller for any interest, service charges or other charges due to late payment of any invoice of Purchaser.
32. In no event will Purchaser at any time be liable to Seller for special, incidental or consequential damages, including, but not limited to, loss of profits, loss of revenue, claims of customer or for any other loss of any nature, whether based in contract, tort, negligence, strict liability or otherwise and arising from any cause whatsoever.
33. Any action resulting from any breach on the part of Purchaser as to the goods or services delivered hereunder or for any breach of the agreement resulting from this purchase order must be commenced by Seller within one year after the cause of action has accrued.
34. In the event this purchase order covers the purchase of operative equipment, Seller agrees that for a period of three (3) years after the equipment is placed in operation or within three (3) years after the end of the warranty period set forth in the applicable plans and specifications, whichever is later, that it, and none of its subsidiaries, divisions, affiliates, agents, distributors, dealers or representatives shall solicit agreements or orders, or enter into agreements or orders, for the repair, service or maintenance of any of the equipment purchased under this purchase order. In the event Seller or any of its subsidiaries, divisions, affiliates, agents, distributors, dealers or representatives shall solicit agreements or orders, or enter into any agreements or orders for the repair, service or maintenance of any of the equipment purchased under this purchase order, Seller shall indemnify, hold harmless and be liable to Purchaser for any loss or damage Purchaser sustains, or has sustained, as a result of such activity, including, without limitation, lost profits and lost income.
35. Unless otherwise noted all equipment and material is in accordance with plans and specifications including all addendums.

PURCHASE ORDER INSTRUCTIONS:

__X__ Provide __48.00__ Hours Prior notice to Delivery at (847)364-8100
__X__ Provide __12.00__ Sets of Submittal Data for __X__ Approval _____ Record Purpose
_____ Provide __8.00__ Sets of Installation, Operating and Maintenance Instruction
_____ Hold for Construction and Shipment Until Approved and Released
__X__ Release for Immediate Construction and Shipment
_____ Mail Order _____ Confirming Phone Order - Do Not Duplicate
_____ Provide Edwards Engineering, Inc. with Certificate of Insurance prior to commencement of work

Invoices received without Purchase Order Number identified will be returned without processing!

Purchase Order Total   $153,355.00

Approved By:
Ordered By: MICHAEL B. JOHNSON

Purchase Contact:

_Michael B John_
Authorized Signature

PRESIDENT    10-3-05
Title        Date

_____
Vendor's Signature

_____    _____
Title              Date