**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

EDWARDS ENGINEERING, INC.,     )
          Plaintiff,     )
                         )     Case No. 08 CV 3013
      v.               )     Judge: Coar
                         )     Magistrate Judge: Cole
PRECISION BOILERS, INC.     )
          Defendant.     )

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**

      Precision Boilers, Inc. ("Defendant"), by its attorneys Geoffrey A. Bryce and Emily K. Muceus, for its Memorandum in Support of its Motion to Dismiss Edwards Engineering, Inc's ("Plaintiff") Complaint, states as follows**:**

**I.     INTRODUCTION**

      Plaintiff's Complaint should be dismissed as each of the causes of action fails to state a claim.  Specifically, Plaintiff's breach of contract count fails as Plaintiff did not allege its own performance under the contract.  Plaintiff's claims for breach of warranty and implied warranties fail as Plaintiff failed to allege that it gave Defendant notice of the alleged defects.  As Plaintiff's Complaint fails to allege sufficient facts to state the alleged causes of action, the Complaint should be dismissed.

**II.     FACTUAL BACKGROUND**

      Defendant was retained by Plaintiff to provide a custom built boiler for Plaintiff's work on Illinois Masonic Hospital at 836 W. Wellington, Chicago, IL. (A copy of Plaintiff's Complaint is attached as Exbibit A, Complaint, ¶ 6.)  Plaintiff alleges that the boiler supplied by Defendant did not meet the requested specifications and did not work. (Complaint, ¶ 10.)   Plaintiff seeks reimbursement in the amount of $353,323.59, alleging that these were the costs Plaintiff incurred to replace the boiler.  (Complaint, ¶ 13.)

### III.    ARGUMENT

#### A.    Standard of Review

Rule 8(a) of the *Federal Rules of Civil Procedure* requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." This "short and plain statement" must be enough "to give the defendant fair notice of what the ... claim is and the grounds upon which it rests.' " *Bell Atlantic Corp. v. Twombly,* 127 S.Ct. 1955, 1964, (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). In *Bell Atlantic,* the Supreme Court explained that the "plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic,* 127 S.Ct. at 1964-65. Instead, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 1965; *see also EEOC v. Concentra Health Servs., Inc.,* 496 F.3d 773, 776-77 (7th Cir. 2007). This requires the complaint to contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic,* 127 S.Ct. at 1974; *see also Killingsworth v. HSBC Bank Nevada, N.A.* 507 F.3d 614, 618 -619 (7th Cir. 2007).

#### B.    Plaintiff's Claim for Breach of Contract Should be Dismissed.

To plead a claim for breach of contract, a Plaintiff must allege: (1) offer and acceptance, (2) consideration, (3) definite and certain terms, (4) performance by the plaintiff of all required conditions, (5) breach, and (6) damages. *MC Baldwin Financial Co v. DiMaggio, Rosario and Veraja, LLC*, 364 Ill.App.3d 6, 14, 845 N.E.2d 22, 30 (1st Dist. 2007); *Village of South Elgin v. Waste Management of Illinois, Inc.,* 348 Ill.App.3d 929, 940, 810 N.E.2d 658, 669 (2nd Dist. 2004).  Further, the Federal Rules of Civil Procedure

require Plaintiffs to plead conditions precedent to their claims, such as their own performance. F. R. Civ. P. 9(c). Plaintiff failed to allege the elements of the breach of contract count, as Plaintiff does not allege its own compliance with the contract. There are no allegations that Plaintiff paid for the boiler or otherwise met any of its obligations under the contract. As Plaintiff has failed to allege the necessary elements for a breach of contract claim, Count I of Plaintiff's Complaint should be dismissed.

### C.     Plaintiff's Claim for Breach of Warranty Should be Dismissed.

Plaintiff's claim for breach of warranty fails as Plaintiff failed to allege that it gave Defendant notice of the alleged defects within the warranty period. According to Plaintiff's Complaint, Plaintiff purchased the boiler in a Purchase Order dated August 15, 2005, which purchase order included a five year parts and one year labor warranty. Complaint, ¶ ¶ 6, 15. There are no allegations as to if and when Plaintiff notified Defendant of the alleged defects to demonstrate the existence of defects and notice within the warranty period.

Illinois law holds that express warranties of limited duration cover only defects that become apparent during the warranty period. *Tokar v. Crestwood Imports, Inc.,* 177 Ill.App.3d 422, 431-32, 126 Ill.Dec. 697, 532 N.E.2d 382 (1988). A purchaser should not be allowed to seek damages for breach of an express warranty beyond the limits specified in that warranty. *Evitts v. DaimlerChrysler Motors Corp.* 359 Ill.App.3d 504, 511, 834 N.E.2d 942, 950-950 (1st Dist. 2005). The Court in *Evitts v. DaimlerChrysler Motors Corp.* dismissed Plaintiff's cause of action for breach of warranty relating to a defroster, stating: "Plaintiffs' complaint contains no allegation that they sought repairs to the defroster within the express warranty period or that defendants failed to repair it in a

reasonable time and manner pursuant to the terms of the warranty. " *Id.   See also Naiditch v. Shaf Home Builders, Inc.*  160 Ill.App.3d 245, 263, 512 N.E.2d 1027, 1038-1038 (2nd Dist.,1987).

Similarly, in this case there are no allegations that Plaintiff notified Defendant of the alleged defects during the warranty period or that Defendant failed to repair the boiler within the warranty period.  Because Plaintiff failed to allege that it notified Defendant of its breach of the warranty and that Defendant was unable to repair the boiler within the warranty period, Plaintiff's claim for breach of warranty should be dismissed.

**D.     Plaintiff's Claims for Breach of Implied Warranty (Merchantability) and Breach of Implied Warranty (Fitness) Should be Dismissed.**

Count III alleges Breach of Implied Warranty of Merchantability pursuant to 810 ILCS 5/2-314.  In order to state a claim under this cause of action, Plaintiff must allege: 1) Defendants sold goods that were not merchantable at the time of sales; 2) Plaintiff suffered damages as the result of the defective goods; and 3) Plaintiff gave the Defendant notice of the defect.  *Industrial Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F.Supp.2d 741 (N.D. Ill. 1999).

Count IV seeks recovery under Breach of Implied Warranty of fitness for a particular purpose pursuant to 810 ILCS 5/2-315.  To state a claim for Breach of Implied Warranty of Fitness for a particular purpose, Plaintiff must allege: 1) the seller had reason to know that the particular purpose for which the buyer required the goods; 2) the buyer relied on the seller's skill and judgment to select the goods; and 3) the seller knew of the buyers' reliance on its skill and judgment.  *In re McDonalds French Fries Litigation*, 503 F.Supp.2d 953 (N.D. Ill. 2007).

810 ICS 2-607(3)(a) applies to both implied warranties of merchantability and fitness for a particular purpose and "imposes a duty upon every buyer who has accepted goods to give notice of an alleged breach of an implied warranty to his seller within a reasonable time after he discovers, or should have discovered, the breach lest his claim be barred from any remedy." 810 ILCS 5/2-607(3)(a) (West 1996); *Maldonado v. Creative Woodworking Concepts, Inc.* 296 Ill.App.3d 935, 939, 694 N.E.2d 1021, 1025-1026, (3rd Dist.1998); *Wagmeister v. A.H. Robins Co.,* 64 Ill.App.3d 964, 21 Ill.Dec. 729, 382 N.E.2d 23 (1978).   In every action for breach of warranty, notice is an essential element (*Branden v. Gerbie,* 62 Ill.App.3d 138, 19 Ill.Dec. 492, 379 N.E.2d 7 (1978)), and the failure to allege sufficient notice may be a fatal defect in a complaint alleging breach of warranty *Connick v. Suzuki Motor Co.,* 174 Ill.2d 482, 221 Ill.Dec. 389, 675 N.E.2d 584 (1996). Section 2-607(3)(a) requires that the plaintiff contact the seller directly and inform the seller of the problems with the product that he purchased. *Maldonado v. Creative Woodworking Concepts, Inc.* 296 Ill.App.3d 935, 939, 694 N.E.2d 1021, 1025-1026, (3rd Dist.1998) *Connick,* 174 Ill.2d at 494, 221 Ill.Dec. at 395, 675 N.E.2d at 590.

In this case, Plaintiff has not alleged that it gave Defendant notice of the alleged defects.  There are no allegations that Plaintiff contacted Defendant and notified Defendant that there were problems with the boiler or provided Defendant with an opportunity to meet its alleged requirements under the implied warranty and repair the allegedly defective boiler.  Because Plaintiff failed to allege notice as required by 810 ILCS 5/2-314, 315 and 607, its implied warranty claims fail and should be dismissed.

**IV.    CONCLUSION**

Wherefore, Defendant Precision Boilers, Inc. prays that this Court dismiss Edward's Engineering, Inc's Complaint in this matter and for all other and further relief that this Court deems just and appropriate.

**PRECISION BOILERS, INC.**

By:\_\_\_\_\_/s/ Emily K. Muceus_____
One of Their Attorneys

Geoffrey A. Bryce (ARDC #3128821)
Emily K. Muceus (ARDC #6278087)
BRYCEDOWNEY, LLC.
200 N. LaSalle Street, Suite 2700
Chicago, IL  60601
Phone: (312) 377-1501
Fax: (312) 377-1502

FILED COPY: MAY 23, 2008
08CV3013   EDA
JUDGE COAR
MAGISTRATE JUDGE COLE

50484-CCN.

## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

EDWARDS ENGINEERING, INC.,                )
         Plaintiff,                               )
       v.                                          )    Case No.
                           )    Judge:
PRECISION BOILERS, INC.                   )    Magistrate:
         Defendant.                               )

### COMPLAINT

NOW COMES Plaintiff, EDWARDS ENGINEERING, INC. ("Edwards Engineering"),

by and through its attorney, Francisco E. Connell, and Complains against Defendant,

PRECISION BOILERS, INC. ("Precision Boilers") as follows:

#### Jurisdiction and Venue

1.    The court has jurisdiction in accordance with 28 U.S.C. § 1332 because plaintiff

and defendant are citizens of different states, and the amount in controversy exceeds $75,000,

exclusive of interest and costs.

2.    Venue is proper in accordance with 28 U.S.C. § 1391 because a substantial part of

the events or omissions giving rise to the claim occurred in Chicago, Illinois. Moreover, venue

is proper because the defendant, a Tennessee Corporation, is subject to personal jurisdiction in

this district based on its sufficient contacts here.

#### Facts Common to All Counts

3.    Edwards Engineering is an Illinois Corporation with its principal place of

business in Elk Grove Village, Illinois.

4.    Defendant, Precision Boilers, is a Tennessee Corporation, and its principal place

of business is in Morristown, Tennessee.

5.    On November 30, 2005, Edwards Engineering was hired by Illinois Masonic



**EXHIBIT**
**A**
tabbies®

Hospital ("Illinois Masonic") to perform boiler replacement work at 836 W. Wellington, Chicago, Illinois.

6.    Edwards Engineering ordered a boiler from Precision Boilers for installation at Illinois Masonic pursuant to the Purchase Order dated August 15, 2005 ("Purchase Order") as is more fully set forth and incorporated herein as Exhibit A.

7.    Precision Boiler accepted the terms of the Purchase Order when it failed to object to the contents of the Purchase Order within ten (10) days of receipt.

8.    Precision Boilers both commenced work on the boiler and shipped the boiler pursuant to the Purchase Order. See Exhibit A at 10, ¶ 1.

9.    Under the terms of the Purchase Order, all material and equipment furnished under the order were warranted by the Precision Boilers against defects, and Precision Boilers agreed to repair or replace without charge and/or remedy any defects which may develop within five (5) years. (See Exhibit A at 10, ¶ 2; Exhibit A at 6).

10.   The boiler provided by Precision Boilers pursuant to the Purchase Order was defective in on or more of the following ways:

    a.   The boiler failed to meet the specifications of the Purchase Order;

    b.   The boiler failed to operate properly; and,

    c.   The boiler ultimately failed to work at all.

### COUNT I – BREACH OF CONTRACT

11.   Plaintiff realleges and incorporates paragraphs 1 through 10 as paragraph 11 of Count I.

2

12. Precision Boilers breached the terms of the Purchase Order in that it failed to deliver a boiler that produced capacities or met design specifications, intent, and function as called for in the specifications and the Purchase Order.

13. As a result of Precision Boiler's breach, Edwards Engineering incurred damages of $353,323.59 for the replacement of the defective boiler.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

A. That judgment be entered in its favor and against Defendant, PRECISION BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B. For such other and further relief as this Court deems just and proper.

### COUNT II – BREACH OF WARRANTY

14. Plaintiff realleges and incorporates paragraphs 1 through 10 as Paragraph 14 of Count II.

15. The boiler was covered under a five (5) year parts and one (1) year labor Warranty from the date the boiler was placed in operation. (See Exhibit A at 6; Exhibit A at 10, ¶ 2).

16. The boiler never operated according to specifications

17. Precision Boilers' attempts to repair the boiler were unsuccessful.

18. Despite multiple requests by Edwards Engineering, Precision Boilers has failed or refused to repair or replace the defective boiler as required under the warranty.

19. As a result of Precision Boiler's breach, Edwards Engineering incurred damages of $353,323.59 for the replacement of the defective boiler.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

3

A.    That judgment be entered in its favor and against Defendant, PRECISION

BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B.    For such other and further relief as this Court deems just and proper.

### COUNT III – BREACH OF IMPLIED WARRANTY: MERCHANTABILITY; USAGE OF TRADE

20.    Plaintiff realleges and paragraphs 1 through 10 as Paragraph 20 of Count III.

21.    Pursuant to 810 ILCS 5/2-314, there is an implied warranty that the boiler was fit

for the ordinary purposes for which such boilers are used.

22.    Precision boilers breached the implied warranty when it delivered a boiler which

was unfit for the ordinary purposes for which boilers are used.

23.    As a result of Precision Boiler's breach, Edwards Engineering incurred damages

of $353,323.59 for the replacement of the defective boiler.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

A.    That judgment be entered in its favor and against Defendant, PRECISION

BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B.    For such other and further relief as this Court deems just and proper.

### COUNT IV – BREACH OF IMPLIED WARRANTY: FITNESS FOR PARTICULAR PURPOSE

24.    Plaintiff realleges and incorporates paragraphs 1 through 10 as Paragraph 24 of

Count III.

25.    Precision Boilers had reason to know the particular purpose for which the

Edwards Engineering ordered the boiler.

26.    Edwards Engineering relied on Precision Boilers' skill or judgment to furnish a

suitable boiler.

4

27.   Pursuant to 810 ILCS 5/2-315, there is an implied warranty that the boiler delivered by Precision Boilers be fit for the purpose required by Edwards Engineering pursuant to the Purchase Order and industry standards.

28.   Precision breached the implied warranty of fitness when it delivered a boiler that was not fit for the particular purpose required by Edwards Engineering.

WHEREFORE, Plaintiff EDWARDS ENGINEERING, INC. prays as follows:

A.   That judgment be entered in its favor and against Defendant, PRECISION BOILERS, INC., in the amount of $353,323.59 plus the costs of this suit; and

B.   For such other and further relief as this Court deems just and proper.

**Jury Demand**

Plaintiff demands trial by jury.

Respectfully Submitted,
EDWARDS ENGINEERING, INC.

By:   __s/ Francisco E. Connell__
One of its attorneys

Robert R. Benjamin (ARDC #0170429)
Francisco E. Connell (ARDC #6289256)
Querrey & Harrow, Ltd.
Attorneys for Plaintiff
175 W. Jackson St., Ste. 1600
Chicago, IL 60604
(312) 540-7000

Document #: 1315030

5

08CV3013   EDA
JUDGE COAR
MAGISTRATE JUDGE COLE

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

Vendor ID    PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

## PO #                          M94500

Ordered 08/15/2005

Page #        1 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | R | 1.0000 LT | $46,000.5000 | | $46,000.50 |
| | | ** REVISED 10/3/05** | | | | | |
| | | TAG WITH: PRECISION SALES ORDER NUMBER | | | | | |
| | | UO50089 DATED 7/27/2005 | | | | | |

One (1) Model UFS-33-500-160-WE-N-NOx Steam Boiler,
160 PSIG Maximum Allowable Working Pressure (MAWP)
built in accordance with A.S.M.E. Code Section I for Power
Boilers. The unit shall be designed and manufactured for
an output of 17,250 lb/hr steam at 212 degrees F.  500
Horsepower unit shall be inspected and stamped in
accordance with the ASME Code and National Board
Registered.
Factory assembled boiler package includes inner casing,
insulation, and outer casing  The insulation consists of 2"
inner and ¼" between the inner and outer casing.  The
inner and outer casings are removable to permit access to
the tubes for inspection and or replacement.  Rear access
convection clean-out panels are furnished. The pressure
vessel is set on a heavy structural steel base frame, which
includes two lifting lugs on each side.  Flue gas connection
is located on the top centerline of the boiler at the front or
rear.  Furnace access is at the rear of the boiler.
TAPPINGS AND CONNECTIONS
*   Stack Connection            @      28" ID
*   Bottom Blow Down (2 quick/1 slow)@      Two(2), 1 ½
* NPT, one front & one rear  * Feed water Inlet          @
1 ½" NPT
*   Surface Blow off            @      3/4" NPT
BURNER PERFORMANCE & UTILITY

Continued



# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL   60007-4922

Phone (847)364-8100 Fax (847)364-0188

**PO #**                           **M94500**

Ordered 08/15/2005

Vendor ID      PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA   37814

Page #       2 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL   60657
Terms
Ship Via

Phone (423)587-9390 Fax (423)587-7749

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |

REQUIREMENTS: (By Others)
* Electrical Power          @     460/60/3
* Instrument Power          @     120/60/1
* Gas Pressure              @     2# min. - 10# max
* NOx Emission Gas Firing   @     Less than
30 PPM
* Fuel Input                @     21,000 MBH (500
Horsepower)
BOILER TRIM & CONTROLS
* Honeywell L404A Operating Limit
* Honeywell L404C High Limit
* Honeywell L91B-1050 Modulation Control
* Boiler Steam Pressure Gauge
* Main Low Water Cut-Off and Alarm
* Honeywell L404 Low Steam Pressure Sensor and
Alarm (Set at 30 PSI)
* Auxiliary LWCO/Manual Reset
* Three(3) ASME Safety Relief Valves, 1.50" in x 2.0"
out, set at 150 PSI, rated 6600 Lbs/Hr each
Stop and Check (Non-Return) Valve
* One (1) Slow Opening BD Valve
* Two (2) Quick Opening BD Valve
* One (1) feed water swing check valve
* One (1) feed water globe valve
* Automatic Surface BD
* Conductivity Control
* 2 Spare Tubes per Configuration
BURNER - FORCED DRAFT FOR USE ON NATURAL

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL 60007-4922

Phone (847)364-8100 Fax (847)364-0188

### PO # M94500

Ordered 08/15/2005

Vendor ID PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA 37814

Page # 3 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL 60657
Terms
Ship Via

Phone (423)587-9390 Fax (423)587-7749

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|---|---|---|---|---|---|---|---|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | | 3010 BOILERS | | | | | |
| | | GAS | | | | | |

The proposed boilers shall be furnished with Webster
HDLRVX7G-200-MARK VI burners equipped with the
following:
- UL/FM/IRI/CSD-1/Illinois Code Compliance
- Full Modulation Firing Sequence
- Forced Fan and TEFC Fan Motor
- Starters for Forced Draft Fan
- NEMA 1 Control Panel with 7 panel lights
- Fused Power on-off switch
- Control Circuit Transformer with fuse protection
- Auto Flame Safeguard - MARK VI With UV Flame
Scanner (Johnson Metasys Compatible)
- Lights, Power On - Call For Heat - Main Fuel - High
Steam - Low Steam - Low water - Alarm
- Switches for: Manual Potentiometer, Manual- Auto
- Alarm Bell w/Silencing Switch
- Relays: Low Water, High Water, BAS, CAD, Flue
Interlock
- Induced FGR - piping is included
- Air Inlet Silencer
- ABB VFD
- Eurotherm Chessel Multi Trace Recorder - mounted
- Hays Cleveland B-08200-00 Multi Pointer Flue Draft
and Furnace Pressure Draft Gauge - mounted
- 4.5" 300# Steam Pressure Gauge - mounted
- 4.5" Gas Supply Pressure Gauge - mounted
- 4.5" Manifold Gauge - mounted

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

Vendor ID    PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

**PO #         M94500**

Ordered 08/15/2005

Page #      4 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | | 3010 BOILERS | | | | | |
| | | *  Engraved Light Labels | | | | | |
| | | *  Engraved Switch Labels | | | | | |
| | | *  8:1 Turndown | | | | | |
| | | *  Auto Flame DTI (Johnson Metasys Compatible) | | | | | |
| | | UL/CSD-1/FM/RI GAS TRAIN | | | | | |
| | | Package Boiler/Burner Power Requirements | | | | | |
| | | *  Maxon Dual Safety Valves | | | | | |
| | | Burner Blower Motor 20HP - 23.5 Amp.   * 8 | | | | | |
| | | *  Main Gas Regulator   * Low | | | | | |
| | | handf Cocks   - Control | | | | | |
| | | and High Gas Pressure Switches | | | | | |
| | | Transformer Primary - 3.2 Amp. | | | | | |
| | | *  Asco N.O. 1.25" Safety Vent Valve | | | | | |
| | | UL PILOT TRAIN | | | | | |
| | | *  Dual Safety Valves | | | | | |
| | | *  Main Gas Regulator | | | | | |
| | | *  Shutoff Cocks | | | | | |
| | | PRICE | | | | | |
| | | One (1) O2 trim systems, EGA System. | | | | | |
| | | Start-up and owner training is included. | | | | | |
| | | Equipment Bond. | | | | | |
| | | DELIVERED $153,355 | | | | | |
| | | TAG WITH: PRECISION SALES ORDER NUMBER   R | 1.0000 LT | $107,348.5000 | | | $107,348.50 |
| | | UO50589 DATED 7/27/2005 | | | | | |
| | | One (1) Model UFS-33-500-150-WE-N-NOx Steam Boiler, | | | | | |
| | | 150 PSIG Maximum Allowable Working Pressure (MAWP) | | | | | |
| | | built in accordance with A.S.M.E. Code Section I for Power | | | | | |
| | | Boilers. The unit shall be designed and manufactured for | | | | | |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

### PO #          M94500

Ordered 08/15/2006

Vendor ID    PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Page #       5 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

Phone (423)587-9390 Fax (423)587-7749

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | | 3010 BOILERS | | | | | |

an output of 17,250 lb/hr steam at 212 degrees F.  500
Horsepower unit shall be inspected and stamped in
accordance with the ASME Code and National Board
Registered.
Factory assembled boiler package includes inner casing,
insulation, and outer casing.  The insulation consists of 2"
inner and ½" between the inner and outer casing.  The
inner and outer casings are removable to permit access to
the tubes for inspection and or replacement.  Rear access
convection clean-out panels are furnished.  The pressure
vessel is set on a heavy structural steel base frame, which
includes two lifting lugs on each side.  Flue gas connection
is located on the top centerline of the boiler at the front or
rear.  Furnace access is at the rear of the boiler.
TAPPINGS AND CONNECTIONS
* Stack Connection        @    28" ID
* Steam Outlet            @    8"- ASME Flange
* Bottom Blow Down (2 quick/1 slow)@    Two(2),  1 ½
* NPT, one front & one rear  "Feed water inlet     @
1 ½ " NPT
* Surface Blow off        @    3/4" NPT
BURNER PERFORMANCE & UTILITY
REQUIREMENTS: (By Others)
* Electrical Power        @    460/60/3
* Instrument Power        @    120/60/1
* Gas Pressure           @    2# min. - 10# max
* NOx Emission Gas Firing     @    Less than
30 PPM

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922
].

Phone (847)364-8100 Fax (847)364-0188

Vendor ID    PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

**PO #**              **M94500**

Ordered 08/15/2005

Page #        6 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | *   Fuel Input        @       21,000 MBH  (500 | | | | | |
| | | Horsepower) | | | | | |
| | | BOILER TRIM & CONTROLS | | | | | |
| | | *   Honeywell L404A Operating Limit | | | | | |
| | | *   Honeywell L404C High Limit | | | | | |
| | | *   Honeywell L91B-1050 Modulation Control | | | | | |
| | | *   Boiler Steam Pressure Gauge | | | | | |
| | | *   Main Low Water Cut-Off and Alarm | | | | | |
| | | *   Honeywell L404 Low Steam Pressure Sensor and | | | | | |
| | | Alarm (Set at 80 PSI) | | | | | |
| | | *   Auxiliary LWCO/Manual Reset | | | | | |
| | | *   Three(3) ASME Safety Relief Valves, 1.50" in x 2.0" | | | | | |
| | | out, set at150 PSI, rated 8800 Lbs/Hr each | | | | | |
| | | *   Steam outlet 6" x 4" Reducer Spool Piece and 4" Stop | | | | | |
| | | and Check (Non-Return) Valve | | | | | |
| | | *   One (1) Slow Opening BD Valve | | | | | |
| | | *   Two (2) Quick Opening BD Valve | | | | | |
| | | *   One (1) feed water swing check valve | | | | | |
| | | *   One (1) feed water globe valve | | | | | |
| | | *   Automatic Surface BD | | | | | |
| | | *   Conductivity Control | | | | | |
| | | *   2 Spare Tubes per Configuration | | | | | |
| | | *   5 Year Parts Only Warranty, 1 Year Labor Only | | | | | |
| | | Warranty | | | | | |
| | | BURNER - FORCED DRAFT FOR USE ON NATURAL | | | | | |
| | | GAS | | | | | |
| | | The proposed boilers shall be furnished with Webster | | | | | |
| | | HDLRVX7G-200-MARK VI burners equipped with the | | | | | |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

Vendor ID      PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

**PO #**                    **M94500**

Ordered 08/15/2005

Page #          7 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 | BOILERS | | | | | |
| | | following: | | | | | |
| | | * UL/FM/RU/CSD-1/Illinois Code Compliance | | | | | |
| | | * Full Modulation Firing Sequence | | | | | |
| | | * Forced Fan and TEFC Fan Motor | | | | | |
| | | * Starters for Forced Draft Fan | | | | | |
| | | * NEMA 1 Control Panel with 7 panel lights | | | | | |
| | | * Fused Power on-off switch | | | | | |
| | | * Control Circuit Transformer with fuse protection | | | | | |
| | | * Auto Flame Safeguard - MARK VI With UV Flame | | | | | |
| | | Scanner (Johnson Metasys Compatible) | | | | | |
| | | * Lights, Power On - Call For Heat - Main Fuel - High | | | | | |
| | | Steam - Low Steam - Low water - Alarm | | | | | |
| | | * Switches for:  Manual Potentiometer, Manual- Auto | | | | | |
| | | * Alarm Bell w/Silencing Switch | | | | | |
| | | * Relays: Low Water, High Water, BAS, CAD, Flue | | | | | |
| | | Interlock | | | | | |
| | | * Induced FGR - piping is included | | | | | |
| | | * Air Inlet Silencer | | | | | |
| | | * ABB VFD | | | | | |
| | | * Eurotherm Chessel Multi Trace Recorder - mounted | | | | | |
| | | * Hays Cleveland D-06200-00 Multi Pointer Flue Draft | | | | | |
| | | and Furnace Pressure Draft Gauge - mounted | | | | | |
| | | * 4.5" 300# Steam Pressure Gauge - mounted | | | | | |
| | | * 4.5" Gas Supply Pressure Gauge - mounted | | | | | |
| | | * 4.5" Manifold Gauge - mounted | | | | | |
| | | * Engraved Light Labels | | | | | |
| | | * Engraved Switch Labels | | | | | |
| | | * 8:1 Turndown | | | | | |

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

Vendor ID    PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA  37814

Phone (423)587-9390 Fax (423)587-7749

**PO #**        **M94500**

Ordered 08/15/2005

Page #        8 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
**Terms**
**Ship Via**

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
| 05237 | | IMMC (BOILER REPLACEMENT) | | | | | |
| | 3010 BOIL I-RS | | | | | | |
| | | * Auto Flame DTI (Johnson Metasys Compatible) | | | | | |
| | | UL/CSD-1/FM/IRI GAS TRAIN | | | | | |
| | | Package Boiler/Burner Power Requirements | | | | | |
| | | * Maxon Dual Safety Valves | | | | | |
| | | Burner Blower Motor  20HP - 23.5 Amp. | | | | | |
| | | * Main Gas Regulator | | | | | |
| | | Oil Pump Motor 1/2HP - 1.1 Amp. | | | | | |
| | | * Shutoff Cocks | | | | | |
| | | Air Atomizing Compressor - 5HP - 6.8 Amp | | | | | |
| | | Low and High Gas Pressure Switches | | | | | |
| | | Control Transformer Primary - 0.2 Amp. | | | | | |
| | | * Asco N.O. 1.25" Safety Vent Valve | | | | | |
| | | UL PILOT TRAIN | | | | | |
| | | * Dual Safety Valves | | | | | |
| | | * Main Gas Regulator | | | | | |
| | | * Shutoff Cocks | | | | | |
| | | PRICE | | | | | |
| | | One (1) 02 trim systems, EGA System, | | | | | |
| | | Start-up and owner training is included. | | | | | |
| | | Equipment Bond. | | | | | |
| | | DELIVERED $153,355 | | | | | |
| | | Backcharge per M&J. Amount settled with Ed Meliner | R | 1.0000 | $-12,000.0000 | | $-12,000.00 |
| | | (Meiner Mechanical Sales) Acct Rep. | | | | | |

Phase 3010 Total        $141,250.00

Continued

# EDWARDS ENGINEERING INC.

1000 Touhy Avenue
Elk Grove Village, IL  60007-4922

Phone (847)364-8100 Fax (847)364-0188

Vendor ID    PRE572

PRECISION BOILERS INC
5727 SUPERIOR DR
MORRISTOWN, PA   37814

**PO #**                    **M94500**

Ordered

Page #           9 of 12
Ship to:
ILLINOIS MASONIC MEDICAL
CENTER
836 WEST WELLINGTON AVENUE
CHICAGO, IL  60657
Terms
Ship Via

| JobID | PhaseID | Description | Quantity | U/M | Price | U/M | Total |
|-------|---------|-------------|----------|-----|-------|-----|-------|
|       |         |             |          |     | Purchase Order Total |  | $141,259.00 |

EDWARDS ENGINEERING, INC.
PURCHASE ORDER

1.  Seller's execution and return of the acknowledgment copy of this purchase order , Seller's failure to object to the contents of this purchase order within ten (10) days of receipt, or Seller's commencement of work on such goods or shipment of such goods as described in this purchase order, whichever occurs first, shall be deemed acceptance of the Purchaser's offer to purchase contained in this purchase order. Any acceptance of this purchase order is limited to acceptance to the express terms of the offer contained herein. Any proposal for additional or different terms or any attempt by Seller to vary in any degree any of the terms of this offer in Seller's acceptance is hereby objected to and rejected, but such proposal shall not operate as a rejection of this offer, unless such variance are in the terms of the description, quantity, price or delivery schedule of the goods, but shall be deemed a material alteration thereof, and this offer shall be deemed accepted by the Seller without said additional or different terms. If this purchase order shall be deemed an acceptance of a prior offer by the Seller, such acceptance is limited to the express terms contained herein.
Additional or different terms or any attempt by Seller to vary in any degree any of the terms of this purchase order shall be deemed material and shall be rejected. This purchase order shall not operate as a rejection of the Seller's offer unless it contains variances in the terms of the description, quantity, price or delivery schedule of the goods. This purchase order can only be modified or changed in writing executed by an officer of Purchaser containing specific reference to the number and date of this purchase order.

2.  All material and equipment furnished under this order shall be warranted by the Seller against defects, and Seller agrees to repair or replace without charge to Purchaser said material and equipment, or remedy and defects, latent or patent, not due to ordinary wear and tear, or not due to improper use or maintenance, which may develop within one year, such period to begin: (a) in cases involving material from date of acceptance; (b) in cases involving operative equipment, from date such equipment is placed in operation, or within the warranty period set forth in applicable plans and specifications, whichever is longer. The warranty shall survive any inspection, delivery, acceptance on payment by Purchaser of the materials or services. Seller warrants that with respect to the articles furnished or services performed hereunder, or both of them, that is has fully complied with the Fair Labor Standards Act, as amended, laws restraining use of convict labor, the Equal Equipment Opportunity and Fair Employment Practices legislation and any regulations issued under the foregoing, and other applicable federal, state and local laws, rules, regulations and executive orders.

3.  All material and equipment furnished under this order is subject to the approval of the architect, engineer, or any other disclosed party, Seller shall furnish the required submittal data or required number of samples for approval.  In the event approval is not given, this order is cancelled.  However, if the approval is not given because of the failure of the Seller to furnish goods in compliance with the plans and specifications, Seller, at Purchaser's option, shall take such steps as necessary to make the goods comply with the plans and specifications, without any cost to Purchaser.  In no event, shall Purchaser be liable to Seller for any costs, damages or other charges for any cancelled order, including, without limitation, restocking charges, loss profit, and/or lost overhead.

4.  All material and/or equipment furnished hereunder shall be in strict compliance with plans, specifications, and general conditions including all alternates, addendums or revisions applicable to the contract of Purchaser with the Owner or another contractor, and Seller shall be bound thereby in the performance of this contract. Purchaser agrees to make available to Seller, upon request, all applicable contract documents with the Owner or another contractor.

5.  [illegible]

6.  The materials and equipment covered by this order whether in a deliverable state or otherwise, shall remain the property of the Seller until delivered to the designated location and received by Purchaser with a receipt executed by Purchaser at which time title and risk of loss to any such materials and equipment shall pass to the Purchaser. Any damage to the material or equipment or loss of any kind in transit shall be borne by Seller notwithstanding the manner in which the goods are shipped or who pays the freight or other transportation costs.  Purchaser shall notify the Seller as soon as practicable of any damage to material or equipment or any loss occurring in transit.

7.  Purchaser assumes no obligation for equipment or materials shipped in excess of this purchase order.

8.  The Seller hereby agrees to indemnify, defend and save harmless the Purchaser from the against all claims, loss, damage or expense, including attorney's fees and other defense costs, by reason of any actual or alleged infringement of any patent or other intellectual property rights arising from the purchase of any equipment or material pursuant to this purchase order  or any litigation based thereon covering any equipment or material  purchased hereunder.

9.  Payment to the Seller is dependent as a condition precedent upon the Purchaser receiving payment from its customer, including any retention.

10.  When accepted, this order is not subject to cancellation, price change or reduction by Seller in the amount of deliveries except with  written consent of an officer of Purchaser and on the terms and conditions herein.

11.  All materials are subject to Purchaser's inspection and approval, and the final inspection and account will be made after receipt at Purchaser's designated destination; if rejected they will be held for disposition at Seller's risk and expense.  Any payment on account thereof will be made promptly and refunded by Seller.  Any inspection or approval at Seller's plant during or after manufacture shall  be provisional only and not constitute final inspection nor be construed as a waiver of the foregoing right of inspection and rejection after receipt of same.

12.  No charge shall be made for tools, dies, patterns, drawings, etc., required for fabrication of parts unless so stated in this order.

13.  All material must be packaged securely.

14.  f shipment is not made within time specified, Seller shall notify Purchaser promptly.  If Seller fails to deliver any or all of the material, or merchandise, or fails to render services covered by this order within the time agreed, Purchaser reserves the right to purchase elsewhere and charge Seller with loss incurred as a result thereof, or at Purchaser's option to cancel this order as to material or merchandise not delivered and services not rendered, and Purchaser shall be

under no obligation to accept or pay for same or compensate Seller for expenses incurred. Nothing in this clause shall affect any other right conferred on Purchaser by law.

15. Contract price includes all charges for taxes of any kind, transportation, cartage, delivery, boxing, packaging, crating and returnable cartons.

16. Seller is responsible for all articles covered by this order until delivery at delivery point designated herein, and shall bear all risks as to rejected articles after notice of rejection.

17. Purchaser reserves the right to change delivery specifications in accordance with its requirements.

18. Purchaser reserves right to countermand this order in the event of strike, flood, riot, war, rebellion, or any or all other contingency unavoidable or beyond its control which could make it impossible to or create an undue hardship to accept delivery of the material, merchandise or services herein ordered.

19. Payment does not constitute acceptance but all materials, merchandise or services are subject to Purchaser Inspection and rejection, defective material or merchandise or service not per the specification will be held for Seller's instruction and at Seller's risk. No goods returned as defective shall be replaced without an order.

20. No statement, condition or agreement and no representation or guarantee has been made by any agent, officer or employee of Purchaser in any way affecting the terms hereof. No alteration or modification of this order is varied unless in writing, signed by an authorized executive of Purchaser.

21. To the fullest extent permitted by law, Seller agrees to defend, indemnify and hold harmless Purchaser and each of its shareholders, directors, officers, partners, employees, agents, subsidiaries and divisions (and each of their heirs, successors and assigns) from any and all claims demands, liabilities, suits, causes of action, judgments, costs and expenses, including attorneys' fees and other defense costs, arising, or allegedly arising, from personal injury, including death, property damage, including loss of use there of, economic loss, or otherwise, due in any manner to any negligent or intentional act or failure to act of Seller or any of its agents, employees or subcontractors as the result of furnishing or sale of goods pursuant to this purchase order, whether any act, error, omission or negligence of any indemnitee contributed thereto shall not bar the recovery of any other indemnities hereunder. This indemnification provision is in addition and cumulative to any other right of indemnification or contribution which any of the indemnities may have in law, at equity or otherwise and shall survive termination of this purchase order. For any claims against any person or entity indemnified under this paragraph 21 by an employee of the Subcontractor, anyone directly or indirectly employed by it or anyone for whose acts it may be liable, the indemnification obligation under this paragraph 21 shall not be limited by limitation on an amount or type of damages, compensation or benefits payable by or for Subcontractors under its workers' compensation acts, disability benefit acts or other employee benefit acts.

22. Seller shall maintain commercial general liability insurance with limits of $2,000,000 general aggregate, $2,000,000 completed operations aggregate, and $2,000,000 each occurrence for bodily injuries, death and property damage, and personal injury resulting from any one occurrence during performance pursuant to this purchase order, including the following coverages and conditions:

.1   Shall name Contractor and any other parties designated by Contractor an Additional Insureds as their interests may appear pursuant to ISO Additional Insured Endorsement CG 2010 (11/85) (or the most recent form of said endorsement, if applicable), including but not limited to the following entities:
A copy of such Additional Insured endorsement shall be attached to the Certificate of Insurance, and the endorsement number or designation shall be entered on the Certificate.

.2   Premises-Operations and Independent Contractors;

.3   Products/Completed Operations for three (3) years after completion of the Work;

.4   Broad Form Property Damage;

.5   Contractual Liability;

.6   Collapse, Explosion and Underground Property Damage;

.7   Must be endorsed as Primary and Non-Contributory as to any other insurance of the Additional Insureds;

.8   If the Additional Insureds have other insurance which is applicable to the loss, such other Insurance shall be on an excess or contingent basis to the subcontractor's    policy;

.9   If the primary/non-contributory wording is not available or provided, a separate Owners & Contractors Protective Liability (OCP) must be provided, listing all the   Additional Insureds and with limits equal to $2,000,000 per occurrence and $2,000,000 aggregate;

.10  A Waiver of Subrogation in favor of Contractor shall also be included;

.11  The General Aggregate shall apply on a "Per Project" basis; and

.12  Broad form vendor's endorsement.

23. Rights and remedies reserved hereunder are cumulative and in addition to other rights and remedies at law or equity. No waiver or breach of any provision hereof shall constitute waiver of any other breach or of such provision; This order shall be governed in all respects by the laws of the State of Illinois. Any provisions hereof found to be invalid under Illinois law shall be invalid only with respect to the offending provisions.

24. All claims for monies due or to become due from Purchaser are subject to deduction by Purchaser for any offset from counterclaim arising from this or any other order from Purchaser to Seller.

25. In the event of any proceeding, voluntary or involuntary, in bankruptcy or insolvency, by or against Seller, or if there be appointment of assignee for benefit of creditors of Seller or of a Receiver for Seller, Purchaser may cancel any undelivered part of this order without liability.

26. Seller shall furnish to Purchaser, at its request, waiver or waivers of lien (partial or final) or other documents which Purchaser may request in order to comply with the Mechanic's Lien laws of the State of Illinois or any other applicable state.

27. Purchaser reserves the right to retain up to 10% of the purchase price subject to the final payment as specified in the purchaser's contract with General Contractor/Customer/Owner.

28. Seller shall comply with all safety and health requirements of local, state and federal regulatory agencies. Seller shall provide material safety data sheets, as required to comply, with OSHA standards.

PO # M94500
Page # 12 of

29. No part of this purchase order may be assigned or subcontracted without the prior written approval of Purchaser.
30. This purchase order and any documents referred to therein constitute the entire agreement between the parties. The terms and conditions of this purchase order supersede any prior agreements, representations, inducements or understandings of any kind or nature between the Seller and Purchaser.
31. Under no circumstances, will Purchaser be liable to Seller for any interest, service charges or other charges due to late payment of any invoice of Purchaser.
32. In no event will Purchaser at any time be liable to Seller for special, incidental or consequential damages, including, but not limited to, loss of profits, loss of revenue, claims of customer or for any other loss of any nature, whether based in contract, tort, negligence, strict liability or otherwise and arising from any cause whatsoever.
33. Any action resulting from any breach on the part of Purchaser as to the goods or services delivered hereunder or for any breach of the agreement resulting from this purchase order must be commenced by Seller within one year after the cause of action has accrued.
34. In the event ~~████████████████████████████████████████████████████████~~ In the event Seller or any of its subsidiaries, divisions, affiliates, agents, distributors, dealers or representatives shall solicit agreements or orders, or enter into any agreements or orders for the repair, service or maintenance of any of the equipment purchased under this purchase order, Seller shall indemnify, hold harmless and be liable to Purchaser for any loss or damage Purchaser sustains, or has sustained, as a result of such activity, including, without limitation, lost profits and lost income.
35. Unless otherwise noted all equipment and material is in accordance with plans and specifications including all addendums.

PURCHASE ORDER INSTRUCTIONS:

__X__ Provide __48.00__ Hours Prior notice to Delivery at (847)364-4100
__X__ Provide __12:00__ Sets of Submittal Data for __X__ Approval _____ Record Purpose
____ Provide __8:00__ Sets of Installation, Operating and Maintenance Instruction
____ Hold for Construction and Shipment Until Approved and Released
__X__ Release for Immediate Construction and Shipment
____ Mail Order _____ Confirming Phone Order - Do Not Duplicate
____ Provide Edwards Engineering, Inc. with Certificate of Insurance prior to commencement of work

Invoices received without Purchase Order Number Identified will be returned without processing!

Purchase Order Total        $153,355.00

Approved By:
Ordered By: MICHAEL B. JOHNSON                                    Purchase Contact:

_Michael B John_                                                 _____
Authorized Signature                                             Vendors Signature

_PRESIDENT_        _10-3-05_                                      _____
Title              Date                                          Title          Date

FILED COPY: MAY 23, 2008
08CV3013   EDA
JUDGE COAR
MAGISTRATE JUDGE COLE

50484 – CON

## IN THE UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| EDWARDS ENGINEERING, INC., | ) | |
| Plaintiff, | ) | Case No. |
| v. | ) | Judge: |
| | ) | Magistrate: |
| PRECISION BOILERS, INC. | ) | |
| Defendant. | ) | |

## AFFIDAVIT AS TO CORPORATE AFFILIATES

The undersigned, BRUCE BRAZAS, Chief Financial Officer of Edwards Engineering,

Inc., being duly sworn and on oath deposes and says:

1.   I am under no disability and am competent to make this Affidavit.

2.   I have reviewed the ownership structure of Edwards Engineering, Inc. and am

aware of its ownership interests.

3.   No publicly held entities own more than 5% of Edwards Engineering, Inc.

That the facts stated herein are within Affiant's personal knowledge and if called as a

witness, Affiant can and will testify competently thereto.

FURTHER AFFIANT SAYETH NAUGHT

_____
BRUCE BRAZAS

Document #: 1330030